## Taylor v. Johnson.

(Decided Feb. 14, 1933.)

CHARLES PRATER and WAUGH & HOWERTON for appellant. WILSON & ROBINSON and WHEELER & WHEELER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On September 25, 1930, J. H. Taylor and Ben Johnson entered into a written contract by the terms of which Taylor traded to Johnson a house and lot in Paintsville for a house and lot in Ashland, and agreed to assume a mortgage on the Ashland property to the extent of $3,-300. Johnson tendered performance, but Taylor refused to convey. Thereupon Johnson brought this suit for specific performance. Taylor defended on the ground that prior to the trade Johnson knowingly and falsely represented to him that the Ashland property was rented for one year at $50 a month, whereas the property, if rented at all, was rented for only $33.33 a month for three months; that the said misrepresentation was made for the purpose of defrauding and deceiving him; that he relied thereon, and but for such misrepresentation would not have entered into the contract. The chancellor adjudged specific performance, and Taylor appeals.

Inequitable conduct, sharp practice, fraud, or unfairness in obtaining of contract will defeat remedy of specific performance. Robenson v. Yann, 224 Ky. 56, 5 S. W. (2d) 271. It cannot be doubted that the answer presented a defense, and the only question for determination is whether the defense is sustained by the evidence.

The evidence discloses that Johnson bought the Ashland property from J. W. Montgomery a few days before the trade. Prior to its purchase, it was rented to a tenant for $50 a month. After the purchase, Johnson told the tenant that he could have the property for three months for $100, and that after that time it would be $40 a month. The tenant had the money and was ready to pay the $100, but after the trade with Taylor was made Johnson told the tenant to pay the money to Taylor. Taylor says that on more than one occasion before the trade was made Johnson told him that the property was rented for one year at $50 a month. J. B. Arnett deposed that he was present on or about September 25, 1930, and heard Johnson call Mr. Montgomery across the street and ask him to tell Taylor what the property was rented for. Montgomery said it was renting for $50 a month. E. P. Maggard, who initiated the negotiations on behalf of Johnson, and was paid by Johnson a commission for his services, admits that he told Taylor that the property was rented for $50 a month, and that at the time he did so he believed the statement was true. He did not hear Johnson tell Taylor that the property was rented for a year for $600, but he did hear him tell Taylor that it was rented for $50 a month. Lev Haney, who went with Taylor and Maggard to look at the property, heard Johnson tell Taylor before the trade that the property was bringing $50 a month. He also heard Johnson say that the property would take care of itself. T. M. Johnson testified that he was present when Ben Johnson called Mr. Montgomery across the street and said to him, "Tell Mr. Taylor what that property is renting for that I got from you upon Winchester," and he said, "Fifty dollars a month." On the other hand, Johnson says that he did not tell Taylor that the property was rented for $50 a month, but did tell him that Montgomery had told him that it was rented for $50 a month. He admitted, however, that before he signed the contract he had made arrangement with the tenant by

which the tenant was to pay him $100 for three months' rent if he could get the money.

Taylor's property in Paintsville was unincumbered. Johnson's property was mortgaged, and Taylor agreed to assume the mortgage to the extent of $3,300. In the circumstances, the amount of rent being paid for the Johnson property was very material. If as much as $50 a month, it would practically take care of the payments to be made on the mortgage. It may be that Johnson did not tell Taylor that the property was rented at $600 for a period of one year, but Taylor's evidence that Johnson told him before the trade was made that the property was rented for $50 a month was not only corroborated by Maggard and Haney, but Maggard, who acted as Johnson's agent, admits that he told Taylor substantially the same thing. Opposed to all this evidence is Johnson's statement that he never told Taylor that the property was renting for $50 a month, but merely told him that Montgomery said that it was renting for $50 a month. Taylor was not interested in what Montgomery had been receiving for the property, but was interested in what the property was bringing at the time the trade was made. Even if we accept Johnson's statement as true, and also the evidence that Johnson called Montgomery over and asked him to tell Taylor what the property was renting for, there is no escape from the conclusion that Johnson's purpose was to create the impression that the property was then bringing $50 a month, although Johnson had already arranged to rent the property for a period of three months at $33.33 a month. In our opinion, not only did Taylor sustain the burden of showing that the contract was obtained by fraud, but it is equally clear that Johnson's own evidence and admissions make out a case of sharp practice sufficient to defeat the remedy of specific performance. It follows that specific performance should have been denied.

Judgment reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.